653 So.2d 642 (1995)
STATE of Louisiana,
v.
Gregory HOLMES.
No. 94-KA-907.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1995.
John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., Louise Korns, of counsel, Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Linda Davis-Short, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, BOWES and GAUDIN, JJ.
*643 KLIEBERT, Chief Judge.
Defendant, Gregory Holmes, appeals his conviction and sentence on charges of two counts of armed robbery, a violation of LSA-R.S. 14:64, and one count of attempted first degree murder, a violation of LSA-R.S. 14:27 and 14:30. He was sentenced to 99 years at hard labor without benefit of parole, probation, or suspension of sentence on each armed robbery conviction and fifty years at hard labor on the attempted first degree murder conviction. All three sentences were ordered to run concurrently, Defendant was given credit for time served. For the reasons which follow, we affirm the armed robbery convictions and sentences; vacate the attempted first degree murder conviction and sentence; and instruct the trial court to comply with La.-C.Cr.P. art. 930.8.
The facts elicited at trial follow:
At about 4:00 A.M. on September 25, 1993, two young white men, Barrett Holley and George Cook, entered the Danny and Clyde's convenience store on Terry Parkway in Gretna, The two were on their way home after having spent several hours in the French Quarter celebrating Mr. Holley's birthday. Mr. Holley testified that he had consumed five or six alcoholic beverages between midnight and four o'clock that morning. Mr. Cook testified that he had had three to four beers.
Mr. Cook testified that he had been in the store on a number of occasions and that he recognized the employees who were working there that morning. Cook and Holley went to the store's sandwich counter and Cook ordered a sandwich from employee Stephanie Lambert. While Ms. Lambert prepared the order, she and Mr. Cook talked and joked with one another.
Three black males, Shawn White, Bryan James, and defendant, Gregory Holmes, arrived at Danny and Clyde's at about the same time as Mr. Cook and Mr. Holley did. They were accompanied by two women, and the group had just left a nightclub. They had been drinking and using drugs since the previous evening. Mr. Cook and Mr. Holley testified that all three black males entered the store. However, Cynthia Edwards, the cashier on duty that morning, testified that two black males entered the store. Shawn White testified that only he and Brian James went into the store, while defendant waited in the car.
While waiting to place his order at the sandwich counter, Shawn White began to argue with Mr. Cook. White accused him of using offensive language and racial slurs with Ms. Lambert, whom White referred to as his "sister." Ms. Lambert told White that Cook was not bothering her, and that she was not White's sister. There ensued an argument between White and Cook, during which White poured beer over Cook's head.
Cook paid the cashier for his sandwich, then he and Holley exited the store. Holley went to Cook's car in the parking lot and got in on the passenger side. Cook opened the driver's side door and put his sandwich on the seat, then was again accosted by White. White hit Cook, and Cook in turn hit White.[1] There was a physical altercation between White and Cook and they were quickly joined by Bryan James and defendant.
White's female companion eventually persuaded White to stop fighting. White and James walked toward their car, leaving defendant at the scene of the fight. Cook testified that he was hit on the head with a bottle by someone he could not see, and he fell to his hands and knees. Cook heard a gunshot, then realized a bullet had entered his back and exited through his abdomen. Mr. Holley, as well as defendant himself, testified that defendant shot Mr. Cook. Defendant took both Cook's and Holley's wallets at gunpoint, then he and his companions left the scene in a car. Mr. Holley described the car as an early 1980's model Ford LTD or Cougar, tan in color. Holley noted that the last three numbers of the car's license plate were 715.
Mr. Holley helped Mr. Cook into the store. Cook laid on the floor, then lost consciousness. *644 Ms. Edwards, the cashier, called police. Deputy Robert Allen of the Jefferson Parish Sheriff's Department reported to the scene, where he took statements from witnesses.
While investigating an unrelated homicide, Sergeant Curtis Snow of the Jefferson Parish Sheriff's Department received information from a confidential source regarding the September 25 shooting and armed robberies. The homicide Sgt. Snow was investigating had occurred in close proximity to Danny and Clyde's and involved Bryan James, Gregory Holmes and Shawn White. The car used in the homicide was a 1976 Ford Thunderbird with license plate number 578N715. Sgt. Snow passed this information on to robbery detective David Yenari.
Detective Yenari compiled photographic lineups of both Gregory Holmes and Shawn White. He was unable to assemble a photo lineup of Bryan James due to the fact that there was no booking photograph of James available. The detective testified that he showed Mr. Cook and Mr. Holley the two photographic lineups. Both victims were able to identify Shawn White, although neither was able to make a photo identification of defendant.
Detective Yenari obtained an arrest warrant for Shawn White. Detectives Yenari and Giron executed the warrant at White's residence in Bridge City. They saw parked at the house a white and orange Ford Thunderbird automobile. The last three numbers of the license plate were 715. After the officers placed White under arrest, they found in his pocket a set of keys fitting the car.
On the evening of White's arrest, Detective Yenari received word that defendant was at the Jefferson Parish Correctional Center and wanted to turn himself in for the robberies and shooting at Danny and Clyde's. Yenari met with defendant at the correctional center and apprised him of his rights. Defendant gave a taped statement, in which he confessed to the shooting and the robberies, and was placed under arrest. Bryan James was later arrested at his residence in Westwego.
George Cook testified that the injuries he sustained due to the shooting included spleen damage, the removal of twelve feet of intestine, and permanent scars. He was hospitalized for seven or eight days, and was confined to bed for about six weeks. As of the time of trial, Cook was still under a doctor's care.
Defendant's appellate counsel alleges the following errors were committed in the trial court:
1. Trial counsel was ineffective in the following respects: Failing to Object (sic) to the State's erroneous recitation of the elements of the charge of attempted first degree murder during State's voir dire. Failing to Object (sic) to the State's erroneous recitation of the elemtsn (sic) of attempted first degree murder during state's opening statement (sic) The defense counsel referred to an erroneous element of the crime in his opening statement (sic) Failing to Object (sic) to the State's errorneous (sic) reference to an element of the crime during defense closing statement (sic) Failing to Object (sic) to the Court's Instructions regarding the elements of the offense of Attempted First Degree Murder (sic).
2. The defendant's convictions of attempted first degree murder and armed robbery violate the double jeopardy clause of the federal and state constitutions. U.S. Const.Amend. V; La. Const. Art. 1, Sec. 15.
3. The trial court erred in allowing into evidence of medical testimony relative to intent to cause great bodily harm.
4. There was insufficient evidence to convict defendant on the attempted first degree murder.
5. The trial court erred in denying defendant's request for a mistrial.
6. The trial court erred in imposing an excessive sentence.
7. Also assigned are any and all errors patent on the face of the record.
In brief to this Court, the State concedes that defendant's contentions concerning assignments of error one and two are correct. *645 We agree and will address the double jeopardy error first.
Defendant contends that double jeopardy bars conviction for both attempted first degree murder and the underlying felony of armed robbery. Both the Louisiana and United States Constitutions prohibit placing a person twice in jeopardy of life or limb for the same offense. United States Constitution Amendment 5; Louisiana Constitution of 1974, Art. 1, § 15. See also La.C.Cr.P. art. 591. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal offense. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); State v. Vaughn, 431 So.2d 763 (La.1983).
It is well settled law that when proof of a felony is an essential element of a first degree murder or an attempted first degree murder, double jeopardy precludes conviction and punishment of defendant for both murder or attempted murder and the underlying felony. State v. Williams, 643 So.2d 284 (La.App. 2nd Cir.1994); State v. Head, 598 So.2d 1202 (La.App. 5th Cir.1992); State v. S.P., 608 So.2d 232 (La.App. 5th Cir.1992); State v. Smith, 600 So.2d 919 (La.App. 4th Cir.1992), writ denied, 625 So.2d 1031 (La. 1993); State v. Jackson, 548 So.2d 57 (La. App. 3rd Cir.1989).
In the instant case, the prosecutor stated, in part, in closing argument:
The third charge, attempted first degree murder. The killing of a human being and thank God that didn't happen, but he attempted it, he attempted to kill George Cook. Did he intend, was his intention to kill or inflict great bodily harm? What else did he mean when he pulled the trigger of the. 357 Magnum as the man was on his hands and knees? Could he have meant not to inflict great bodily harm? Was he in the perpetration of an armed robbery at the time? Sure he was, he told you he took the wallets, he told you he robbed them.
It is apparent that the State relied on the armed robberies as the underlying felonies to prove the elements of the attempted first degree murder.
The prescribed remedy for the violation of double jeopardy resulting from convictions of attempted first degree murder and armed robbery is to reverse the conviction and sentence for the less severely punishable offense and affirm the conviction and sentence of the most severely punishable offense. State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990).
Accordingly, defendant's conviction for attempted first degree murder and the sentence imposed of 50 years at hard labor is vacated.
Three of defendant's assignments of error relate to his conviction of attempted first degree murder, i.e.:
1) Assignment of Error No. 1 (ineffective assistance of counsel based on the use of the wrong elements for the crime of attempted first degree murder);
2) Assignment of Error No. 3 (allowing into evidence medical testimony relative to the intent to cause great bodily harm); and
3) Assignment of Error No. 4 (sufficiency of evidence to support a conviction for attempted first degree murder).
Since we have vacated the convictions and sentences for the attempted first degree murder, we need not consider these assignments of error. Also, we note that although specific intent to inflict great bodily harm may support a conviction of murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. State v. Odom, 511 So.2d 1214 (La.App. 1st Cir.1987), writ denied, 515 So.2d 446 (La.1987); State in the Interest of Hickerson, 411 So.2d 585 (La.App. 1st Cir.1982), writ denied, 413 So.2d 508 (La.1982), appeal after remand, 424 So.2d 1233 (La.App. 1st Cir. 1982).
Next, defendant contends the trial court erred in failing to grant his request for a mistrial based on a police detective's testimony that the photograph of defendant used in a photographic lineup was a "booking" photograph. The defendant specifically objects to the following testimony, elicited from *646 Detective Yenari during direct examination by the prosecution:
Q. Okay, what's the first thing you did in your investigation?
A. I compiled a photographic lineup of Shawn White and a photographic lineup of Gregory Holmes. We didn't have a, we used a booking photograph when we compile (sic) a photographic lineup and we didn't have a booking photograph for Brian James.
After completion of Detective Yenari's testimony, defense counsel requested a mistrial, arguing that the fact that the police had the defendant's photograph on file could be understood as evidence of a prior arrest or conviction. The court denied counsel's motion.
Mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Smith, 430 So.2d 31 (La.1983); State v. Alexander, 351 So.2d 505 (La.1977). La-C.Cr.P. art. 770 mandates a mistrial upon a motion of a defendant, "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: ... another crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible." The courts have consistently held that a policeman is not a "court official" and therefore even if the policeman makes reference in his testimony to another crime, mistrial under La.-C.Cr.P. art. 770 is not required. State v. Hayes, 414 So.2d 717 (La. 1982); State v. Powell, 598 So.2d 454 (La. App. 2nd Cir.1992) writ denied, 605 So.2d 1089 (La.1992); State v. Love, 602 So.2d 1014 (La.App. 3rd Cir.1992); State v. Gordon, 504 So.2d 1135 (La.App. 5th Cir.1987).
The proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. Furthermore, to trigger the need for an admonition the remark must refer to a crime alleged to have been committed by the defendant. La.-C.Cr.P. art. 771; State v. Hayes, supra; State v. Gordon, supra; State v. Pettaway, 450 So.2d 1345 (La.App. 2nd Cir.1984). In the instant case, the officer did not refer to a specific crime committed by defendant. The record does not show that defendant requested the trial judge to admonish the jury. The trial court was therefore under no duty to admonish the jury. Accordingly, this alleged error has no merit.
Next, defendant contends the trial court's imposition of the maximum sentence on each count, in departure from the sentencing guidelines, resulted in the imposition of a constitutionally excessive sentence.
We note that under the provisions of La.C.Cr.P. art. 881.1(D)[2], defendant has not preserved for review the issue of his excessive sentence. See State v. Hutson, 613 So.2d 1134 (La.App. 5th Cir.1993). Moreover, considering the entire record, including the trial court's articulated reasons for departure from the sentencing guidelines, the seriousness of the crime, the surrounding factual circumstances and the defendant's criminal history, the sentence imposed was not an abuse of the discretion afforded the sentencing judge. Therefore, we decline to review defendant's allegations of excessive sentence.
Finally, defendant assigns any and all errors patent on the face of the record. We have reviewed the record and find one error patent. The transcript shows the trial judge failed to comply with La.-C.Cr.P. art. 930.8(C) which provides "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." Accordingly, the trial judge is instructed to inform the defendant of the provisions of article 930.8 by sending written notice to the defendant within ten days of the date this opinion is final and to file written proof in the record that defendant received such notice. See State v. Kershaw, *647 643 So.2d 1289 (La.App. 5th Cir.1994); State v. Procell, 626 So.2d 954 (La.App. 3rd Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2nd Cir.1992).
Accordingly, defendant's armed robbery convictions and sentences are affirmed; his attempted first degree murder conviction and sentence is vacated; and the trial court is instructed to give the defendant the notice required by La.-C.Cr.P. art. 930.8(C).
AFFIRMED IN PART; VACATED IN PART.
NOTES
[1] White testified that he was standing in the parking lot drinking a beer, and that it was Cook who threw the first punch.
[2] La.-C.Cr.P. art. 881.1(D) provides as follows:

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.